UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 6:24-cv-00266-CEM-LHP

COURTNEY ADAMS, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

SAFELITE GROUP, INC.,

    Defendant.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

# THIRD AMENDED CLASS ACTION COMPLAINT[1]

Plaintiff Courtney Adams brings this class action against Defendant Safelite Group, Inc., and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v.*

---

[1] Filed with Defendant's consent to address two issues regarding the proposed class definitions.

1

*Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

2. This is a putative class action pursuant to the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 and the Florida Telemarketing Act ("FTA"), Fla. Sta. § 501.616, et al.

3. Defendant is a national provider of motor vehicle glass repair and replacement. A significant portion of Defendant's revenue is generated through the aggressive promotion and sale of wiper blades any time glass repair/replacement services are provided to a consumer.

4. As one former technician bluntly put it, Defendant's business model has become "All about selling wiper blades":

**Safelite AutoGlass**
Safelite AutoGlass Installation Technician Review

**2.0  All about selling wiper blades**
★★☆☆☆  Installation Technician (Current Employee) - Baton Rouge, LA - August 15, 2022

A lot of senior workers that believe in quality are dropping like flies. It has become a quality over quality environment. You are pushed to sell wiper blades at $30 per blade. If you don't sell over priced blades it affects carrier advancement. Employee price per blad is $6.99. Markup is ridiculous. When I first started there was a quality manager. That position has since been deleted. It's all about doing the job fast now instead of doing a quality job.

Was this review helpful?

Yes  2    No                                                        Report    Share

5.      Another former technician echoed the same issue when describing the company's culture:

> **2.0 ★★☆☆☆ Over worked under paid.**
> Automotive Glass repair Technician (Former Employee) - Hampton, VA - May 6, 2023
>
> What is the best part of working at the company?
> Where I worked it was the manager took care of her employees and helped when you needed her. She had an open door policy.
>
> What is the most stressful part about working at the company?
> Working mandatory 6 days week and no overtime and the pop up jobs that show up out of nowhere.
>
> What is the work environment and culture like at the company?
> Sell wipers that's all they cared about. No matter how much you busted your butt every day getting jobs done, if you didn't sell wipers you failed in there eyes.
>
> What is a typical day like for you at the company?
> Trying to get all of your supplies if they had them and get on the road. Scramble to get as many jobs done as possible in the seating heat or freezing cold or down pours. Weather was a major part in job.

6.      As part of its aggressive wiper blade sales strategy, Defendant engages in unsolicited text message marketing to consumers in Florida. Defendant does so in violation of the FTSA, by failing to secure the requisite express written consent from consumers, and in violation of the FTA by texting consumers before 8:00 am and/or after 8:00 pm.

3

7.      During the time period at issue, Defendant sent several hundred thousand text message solicitations to as many consumers in Florida without their express written consent. In other words, Defendant's violations of the FTSA are not isolated or accidental.

8.      Defendant's unsolicited text message spam caused Plaintiff and the Class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, intrusive invasion of their privacy, and intrusion upon seclusion. Defendant's text messages also occupied storage space on Plaintiff's and the Class members' telephones.

9.      Through this action, Plaintiff seeks an injunction, statutory damages, and/or actual liquidated damages on behalf of Plaintiff and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

## **PARTIES**

10.     Plaintiff is, and at all times relevant hereto was, a citizen and resident of Hillsborough County, Florida. Plaintiff's cellular telephone number has an area code (813) that corresponds geographically with locations in Florida.

11.     Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that Plaintiff was the regular user of cellular telephone number that received Defendant's telephonic sales calls.

12.     Defendant is, and at all times relevant hereto was, a Delaware corporation headquartered in Columbus, Ohio, and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f), and a "commercial telephone seller" as defined by Fla. Stat. § 501.603(2).

## JURISDICTION AND VENUE

13. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a Florida class, such that the class member belong to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the FTSA, which, when aggregated among a proposed class numbering in the thousands, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

14. Defendant is subject to specific personal jurisdiction in Florida because it is tortious conduct was aimed at and occurred in Florida.

15. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS

16. On or around August 10, 2022, Plaintiff called Defendant to make an appointment to have her vehicle's cracked windshield repaired.

17. The crack occurred accidentally and prior to the time Plaintiff contacted Defendant to schedule the repair. The following photograph depicts Plaintiff's vehicle's cracked windshield:



18. Plaintiff scheduled an appointment to have her windshield repaired on August 12, 2022.

19. Because Plaintiff was informed that her residence is located outside of Defendant's service area, Plaintiff scheduled the appointment at her parents' home in Lutz, Florida, which is approximately two hours from Plaintiff's residence.

20. During her call to Defendant, Plaintiff provided her cellular telephone number solely as her contact number for purposes of the appointment, and never agreed to receive advertisements or solicitations from Defendant on her cellular telephone.

21. Plaintiff subsequently canceled the appointment because her child became ill and she was unable to travel.

22. Notwithstanding her lack of consent to receive any type of advertisement or solicitation and the fact that she had canceled her appointment, Defendant, on or about August 11, 2022 at 8:31 pm Plaintiff's time zone, sent the following text message advertisement to Plaintiff's cellular telephone to sell Plaintiff wiper blades:

6

> Worn wiper blades should always be replaced after a repair! Protect your repaired glass by investing in Safelite Advanced Beam Blades for your 2018 GMC YUKON XL: https://safl.it/3QhODBj
>
> 8:31 PM
>
> The sender is not in your contact list.
> Report Junk

23. Defendant's unwanted and unsolicited text message advertisement caused Plaintiff harm, including intrusive invasion of Plaintiff's privacy and intrusive invasion upon Plaintiff's seclusion. Plaintiff did not consent or otherwise give Defendant permission to send her text message solicitations on her personal cellular telephone. Notwithstanding, Defendant interjected itself into Plaintiff's private sphere to peddle windshield wiper blades. In doing so, Defendant disturbed Plaintiff's right to be left alone.

24. Other individuals who have been subjected to Defendant's telemarketing harassment from the same number that text messaged Plaintiff (800-800-2727) have voiced their complaints on the Internet. The following are just some of those consumer complaints:[2]



nan
28 Apr 2010

if i am interested i will call you back, please stop calling me.

---

[2] 800notes.com/Phone.aspx/1-800-800-2727



**Daniel**
15 Oct 2011

Specifically told them, when they asked for my number, not to be put on a list or have my number given to anyone... They said they don't do that... That was yesterday and they are already calling me!

*Caller: Safelight*
*Call type: Telemarketer*



**Brenda Jennings**
7 Dec 2011

I had called Safelite for an estimate on my windshield replacement. It was TWICE as much as anyone else wanted so I went with another company. Now Safelite continues to call even though I have contacted them and asked them not to.

*Caller: Safelite Auto Glass*



**Mrs. White**
4 Apr 2017

Got phone call, reverse searched. Showed as Safelite. Did not give them my # or ask them to call me.

*Caller: Safelite*
*Call type: Telemarketer*



**Mystery**
1 Apr 2021

Received a text claiming I have an assigned visit by a technician from Safelite. I never asked for any service from them.

*Call type: Text message*



25. As demonstrated by the above screenshot of the message sent to Plaintiff, the purpose of Defendant's text message was to solicit the sale of consumer goods and/or services.

26. The message also advertise and called attention to Defendant's products and related services.

27. Plaintiff is the regular user of the telephone number that received the above telephonic sales text message.

28. Plaintiff utilizes her cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line.

29. Plaintiff was in Florida when Plaintiff received the above text message.

30. Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show

9

the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

31. To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform. Defendant's use of a generic text message (depicted above) further demonstrates that Defendant utilizes automated dialing systems to mass transmit solicitation texts to consumers.

32. The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

33. The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

34. The Platform also has an auto-reply function that results in the automatic transmission of text messages.

35. On its website, Defendant openly admits that it utilizes an "***autodialer…to send text messages***[.]" www.safelite.com/terms-of-service; (emphasis added).

36. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

10

37. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

38. Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

39. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

40. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

41. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

42. Compliance with the FTSA will not result in Defendant having to cease its business operations.

43. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

44. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

45. Plaintiff and the Class members never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales texts to their cellular telephone numbers utilizing an automated system for the selection and dialing of telephone numbers.

46. More specifically, Plaintiff and the Class members never signed any type of authorization permitting or allowing the placement of a telephonic sales call by text message using an automated system for the selection and dialing of telephone numbers.

47. Instead, Plaintiff gave her telephone number to Defendant verbally and never authorized the transmission of automated marketing texts to her cellular telephone.

48. Since July 1, 2021, Defendant sent at least several hundred thousand text message solicitations to as many consumers in Florida without their express written consent.

49. Defendant's unsolicited text message spam caused Plaintiff and the Class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, intrusive invasion of their privacy, and intrusion upon seclusion. Defendant's text messages also occupied storage space on Plaintiff's and the Class members' telephones.

## CLASS ALLEGATIONS

**PROPOSED CLASS**

50. Plaintiff brings this lawsuit as a class action on behalf of Plaintiff individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The Class that Plaintiff seeks to represent is defined as:

> **FTSA Class**: **All persons in Florida, who (1) were sent one or more text messages regarding Defendant's wiper blade products, (2) using the same equipment or type of equipment utilized to text message Plaintiff, (3) from July 1, 2021 through May 24, 2023, and (4) where Defendant solely**

>obtained the called telephone number verbally as was the case with Plaintiff.
>
>**FTA Class**: All persons in Florida, who (1) received a text message regarding Defendant's wiper blade products, (2) before 8:00 a.m. or after 8:00 p.m. in their local time zone, (3) where Defendant solely obtained the called telephone number verbally as was the case with Plaintiff.

51. Defendant and its employees or agents are excluded from the Class.

### NUMEROSITY

52. Defendant sent several hundred thousand text message solicitations to as many consumers in Florida without their express written consent.

53. Identification of the Class members is a matter capable of ministerial determination from Defendant's text message records.

### COMMON QUESTIONS OF LAW AND FACT

54. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

    (a) Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;

    (b) Whether Defendant sent telephone solicitations to Plaintiff and the Class members before 8am or after 8pm;

    (c) Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls; and

    (d) Whether Defendant is liable for damages, and the amount of such damages.

55. The common questions in this case are capable of having common answers, and Plaintiff and the Class members have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

56. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

57. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

58. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

59. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for

Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## VIOLATION OF FLA. STAT. § 501.059
### (On Behalf of Plaintiff and the FTSA Class)

60. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 59 as if fully set forth herein.

61. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

62. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

63. "Prior express written consent" means an agreement in writing that:

  1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

   a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

   b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services. Fla. Stat. § 501.059(1)(g).

64. Defendant failed to secure prior express written consent from Plaintiff and the Class members.

65. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls (texts) to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

66. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

16

67. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

68. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## COUNT II
## VIOLATION OF FLA. STAT. § 501.616
### (On Behalf of Plaintiff and the FTA Class)

69. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 59 as if fully set forth herein.

70. It is a violation of the Florida Telemarketing Act, for a "commercial telephone seller or salesperson" to make "a commercial telephone solicitation phone call before 8 a.m. or after 8 p.m. local time in the called person's time zone", "including calls made through automated dialing or recorded message." Fla. Stat. § 501.616(6)(a).

71. A "commercial telephone solicitation" means "an unsolicited telephone call to a person initiated by a commercial telephone seller or salesperson, or an automated dialing machine used in accordance with the provisions of s. 501.059(8) for the purpose of inducing the person to purchase or invest in consumer goods or services;" Fla. Stat. § 501.603(1)(a).

72. A "commercial telephone seller" means "a person who engages in commercial telephone solicitation on his or her own behalf or through salespersons." Fla. Stat. § 501.603(2).

73. In violation of the Florida Telemarketing Act, Defendant made and/or knowingly allowed commercial telephone solicitation phone calls to be made to the Plaintiff and the Class Members before 8 a.m. or after 8 p.m. local time in the called person's time zone.

74. As a result of Defendant's conduct, and pursuant to Fla. Stat. § 501.625, Plaintiff and Class members were harmed and are each entitled to recover actual and/or punitive damages for each violation, including costs, court costs, and attorney's fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages and/or actual liquidated damages for Plaintiff and each member of the Class as applicable under the FTSA and FTA;

c) An award of costs and attorney's fees under the FTA;

d) An order declaring that Defendant's actions, as set out above, violate the FTSA and FTA; and

e) Such further and other relief as the Court deems necessary.

## **JURY DEMAND**

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

DATED: March 20, 2024

                                      Respectfully submitted,

                                      **HIRALDO P.A.**

                                      */s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713